Phu Do Nguyen (State Bar Number 187966)
DO PHU & ANH TUAN, A PROFESSIONAL LAW CORPORATION
10531 Garden Grove Boulevard
Garden Grove, California 92843
Tel: (714) 590-1700
Fax: (714) 590-7868

Attorney for Defendant Quang Cao

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-vs-<br><br>QUANG CAO,<br><br>Defendant. | Case No.: LACR19-145-JAK<br><br>POSITION OF QUANG CAO RE: SENTENCING FACTORS |

To: the above-entitled Court, and Assistant United States Attorney, Gabriel Podesta:

Comes now Phu Do Nguyen, counsel for Defendant, Quang Cao ("Mr. Cao") and files Mr. Cao's Position Re: Sentencing Factors brief in agreement with the recommendation of the Probation Office for a probationary sentence. However, we would ask that the probation period be reduced to one year, as Mr. Cao has shown deep remorse and respect for the law, thus an additional year of probation would not contribute anything towards his rehabilitation, but instead would hinder his potential opportunities. We agree with all of the other probation conditions.

DO PHU & ANH TUAN, APLC

Dated: 10/14/19

Phu Do Nguyen,
Attorney for Quang Cao

Position of Quang Cao Re: Sentencing Factors
1

# INTRODUCTION

Quang Cao was born in Saigon, Vietnam. He is currently 24 years old. His father is Stanley Lee Cao (60 years of age), a manager at a San Jose-based Vietnamese news station. His mother is Van Hong Vo (56 years of age), a 17-year manicurist. Mr. Cao has one sibling, an older brother, Nhan Thieu Cao (29 years of age), a lab technician at a water bottling company.

Mr. Cao and his family immigrated to the United States when he was five years old to escape what his father believed to be a corrupt government and corrupt education system. When they came to the U.S., their limited mastery of the English language, as well as their Vietnamese-based education made it extremely difficult for them to obtain and secure job opportunities.

Mr. Cao's parents were forced to accept manual labor jobs with very little pay in order to provide for the family. Due to financial constraints, the Caos were constantly on the move, and were unable to settle into any sort of permanent living situation. In their first four years in the U.S., they lived at two relatives' homes, two apartments in San Jose, and another apartment in Milpitas.

The Caos struggled with poverty, job insecurity, and racial discrimination throughout their early years in the U.S. This was especially the case when they eventually relocated to Stockton, which at the time was a city that was under-funded and had a high crime rate. Mr. Cao and his brother attended a local public high school that had to deal with escalating violent race-related conflicts between various street gangs.

Financial burdens and insecurities increased for the Caos when Mr. Cao was accepted into the University of California Los Angeles. Mr. Cao and his family were grateful for the educational opportunities that UCLA provided; however, the cost of living in Los Angeles for Mr. Cao was a lot higher than it was in Stockton. He also had to take out student loans to be able to afford the tuition. Mr. Cao worked hard through his time at UCLA, with hopes of one

day becoming the first doctor in his family's history, despite the ever-present and ever-mounting pressure of his and his family's financial hardships.

In 2016, Mr. Cao began his studies for the Medical College Admission Test. To even be remotely competitive, he needed to enroll in an MCAT preparation course, which cost over $2300. He was also still responsible for rent. Mr. Cao was no longer receiving any financial aid, and because his studies would require full-time attention, he was unable to take on a part-time job.

Given those circumstances, Mr. Cao was not sure what he could do to keep his medical school hopes alive. He did not want to financially burden his family more than he already had. Mr. Cao's parents were approaching their 60s, and had worked endlessly for over two decades to get him to where he was.

An opportunity presented itself when a friend offered Mr. Cao a chance to make some money without taking too much time away from his studies. Mr. Cao was told that all he had to do was take a few hours every so often to take SATs and TOEFL exams for students from China applying to U.S. colleges. Mr. Cao accepted and began taking exams for Chinese applicants, using forged passports. He was able to make several hundred dollars per exam, allowing him to be able to afford his rent and the MCAT preparation course.

As one can see, Mr. Cao's transgression in this case was not committed out of malice. Rather, it was born out of financial desperation and the apprehension of losing out on a dream. Mr. Cao understands the wrongness and severity of his actions. He understands that he provided admissions opportunities for foreign students who may or may not have qualified for them on their own. He understands that he took admissions opportunities away from foreign students who might have or would have been eligible. He understands that he did not lessen any burden for his parents with his actions; instead he added to it. He understands that his actions did not

put his medical school dreams closer in reach, but that they could have destroyed them altogether.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. WE AGREE WITH PROBATION'S FEDERAL SENTENCING GUIDELINES ANALYSIS AND RECOMMENDATION

Under U.S.S.G. § 2L2.2(a), the base offense level in this matter is an 8, and under U.S.S.G. § 2L2.2(b)(3)(B), fraudulent use of a foreign passport adds an additional 2 points, giving a total level of 10. However, the U.S. Attorney's office has stated in the plea agreement that should Mr. Cao demonstrate an acceptance of responsibility (which he has and does), that it will recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, putting the case at a level 8, which is in Zone A of the Sentencing Guidelines. Therefore, the total offense level is 8 and Mr. Cao has no criminal history. This puts the sentencing range at 0 – 6 months.

### II. BASED ON SENTENCING FACTORS AND THE TOTALITY OF THE CIRCUMSTANCES, WE REQUEST A REDUCTION IN THE PROBATION PERIOD FROM TWO YEARS TO ONE YEAR

Section 3553(a)(2)(A) instructs the Court to craft a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. A punishment is "just" insofar as it "fits the crime," and "reflects the gravity of the defendant's conduct." *Simon v. United States*, 361 F.Supp.2d 35.

Therefore, in considering Mr. Cao's case, we agree with every condition of probation's recommendation, but only ask that the probation period be reduced from two years to one year. Again, Mr. Cao has shown great remorse for what he has done. He has recognized the severity and consequences of his actions, not just to himself and his family, but to the people he potentially cheated out of meritorious admissions into universities. Mr. Cao is someone who we can rest assure will never see as a defendant in the any criminal justice system again. Therefore,

an additional year of probation would not contribute anything at all to Mr. Cao's rehabilitation and respect for the law.

Rather, the only thing an additional year of probation would do is hinder Mr. Cao's actual and potential opportunities to do even greater things in the community as a licensed medical practitioner. Mr. Cao has already had his admission to Oakland University William Beaumont School of Medicine tentatively rescinded due to the length of probation that has been recommended. He will attend a formal hearing to contest the rescission. It is believed that a shorter probation period of a year would greatly increase his chances of being re-admitted into the school.

Even if Mr. Cao is ultimately not accepted back into Oakland University William Beaumont School of Medicine, he will try to apply to other medical schools. A one-year probation would drastically increase his chances of acceptance versus a two-year probation.

Mr. Cao has always had a natural tendency to help others and to contribute as much as he can to his community and society as a whole. A prime example of this was the time he participated in the AIDS LifeCycle, a 7-day, 545-mile bicycle ride from San Francisco to Los Angeles produced by and benefitting the San Francisco AIDS Foundation and the Los Angeles LGBT Center. All proceeds of the event go towards funding services for HIV/AIDS individuals who may not otherwise receive aid from the government. Mr. Cao was able to raise $3000 preparing for the event.

Mr. Cao is also involved with Project by Project, a non-profit organization of Asian-American professionals that promote leadership through innovative philanthropy. His time with the organization saw a partnership with Gum Moon Residence, a Cantonese non-profit organization, to provide long-term housing solutions for female homeless victims of domestic violence, sexual assault, and human trafficking. The fundraising event was held on September 7, 2019, and has already raised $50,000, which will all be donated to the cause.

To see someone with this much potential, passion, and commitment to helping others not be able to explore and apply that potential would be a huge waste and shame.

## CONCLUSION

For the foregoing reasons, Mr. Cao asks for a one-year term of probation under all the other terms and conditions recommended by the Probation Office.

DO PHU & ANH TUAN, APLC

Date: 10/14/19

Phu Do Nguyen,
Attorney for Quang Cao

**ROOF OF SERVICE**

STATE OF CALIFORNIA)
                    )ss
COUNTY OF ORANGE    )

I am employed in the County of Orange, State of California. I am over the age of 18 and am not a party to the within action. My business address is Law Offices of Do Phu & Anh Tuan, located at 10531 Garden Grove Blvd., Garden Grove, CA 92843.

On October 14, 2019, I served the following document(s) by placing a true and correct copy thereof enclosed in a sealed envelope addressed to all interested parties as listed below.

**DOCUMENT(S):**   Position of Quang Cao Re: Sentence Factors

**PARTIES SERVED**

Nicola T. Hanna, Esq
United States Attorney
1200 Unites States Courthouse
312 North Spring Street
Los Angeles, CA 90012

[X] (BY MAIL) as follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Garden Grove, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

[] (BY ELECTRONIC MAIL): Based on a court order or agreement among the parties to accept electronic service, I caused the documents to be served electronically through email in portable document format ("PDF") Adobe Acrobat.

[ ] (BY PERSONAL SERVICE) As follows: I delivered by hand to the offices of the

[ ] (BY FACSIMILE) as follows: I transmitted via facsimile to

[X] (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on the 14th day of October, 2019

Vickie Bich Huyen Dinh, J.D.